---

(8 App. Div. 59)

### In re WESTURN'S ESTATE.

(Supreme Court, Appellate Division, Third Department.    July 7, 1896.)

1. INHERITANCE TAX—APPRAISEMENT OF ESTATE.
    A decision by an appraiser including as part of the estate a note payable to decedent, will not be disturbed on appeal where there was no testimony that the maker had any defense, or that it could not be collected.

2. SAME—DEDUCTION OF CLAIMS.
    A refusal to deduct from the amount of the estate claims against it will not be disturbed where no evidence is given to show that there were valid claims against the estate.
    Parker and Merwin, JJ., dissenting.

Appeal from surrogate's court, Warren county.

Proceeding for the appraisement of the estate of Samuel Westurn, deceased, under the inheritance tax law.    From an order confirming the appraisal, the heirs and next of kin appeal.    Affirmed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

A. Armstrong, Jr., for appellants.

Potter & Kellogg (J. A. Kellogg, of counsel), for respondent.

PUTNAM, J.    The heirs and next of kin of Samuel Westurn, deceased, appeal from an order of the surrogate of the county of Warren, made and entered on the 24th day of February, 1896, affirming, as modified, an appraisal of the inheritance tax upon the interest of the said appellants.    Samuel Westurn died on the 22d day of May, 1890.    A paper purporting to be his last will and testament was thereupon offered for and admitted to probate by the surrogate of Warren county.    After a long litigation, and on May 21, 1895, it was finally adjudged that said will was procured by fraud and undue influence, and was void, and that Samuel Westurn died intestate.    Thereupon, on June 3, 1895, D. F. Keeffe and Adel Carney were appointed administrators of the estate of said deceased.    On the 6th day of July, 1895, the surrogate of Warren county appointed T. W. McArthur appraiser, under the provisions

of chapter 483, Laws 1885, as amended by chapter 713, Laws 1887, which, as Samuel Westurn died in 1890, it was conceded applied to his estate. The appraiser, after hearing the proofs and allega-. tions of the parties, made his report, which was confirmed by the said surrogate on the 19th day of September, 1895. On the 11th day of November, thereafter, the appellant took an appeal from the said appraisement, under the provisions of section 13 of the said collateral inheritance tax act. A hearing was had before the surrogate, and further evidence offered and received; and upon the 24th day of February, 1896, the surrogate made the final order from which this appeal is taken.

It is urged by the appellants: That the order of appraisal made by the said surrogate under the said collateral inheritance tax act was unauthorized and erroneous, because it was made before the expiration of a year from the granting of letters of administration, and before the time advertised for creditors to present claims had elapsed; because a large claim against the estate had been presented, and other claims were liable to be presented, which might reduce the amount of the estate liable to an inheritance tax; and also because a note for $1,500, made by one Burgess, to recover which an action was pending, was included in the assets of the estate, although the maker disputed his liability. That, therefore, when the order from which the appeal is taken was made, it was impossible for the surrogate to determine the amount of the estate that passed to the appellants. It is true that under the provisions of section 1, c. 483, Laws 1885, as amended by chapter 713, Laws 1887, it is only the property that passes to the heirs or next of kin that is subject to the inheritance tax. It has been held that the tax becomes due and payable immediately upon the death of the testator, and that the property liable to taxation should be appraised, and the tax assessed, as soon after such death as practicable. In re Vassar, 127 N. Y. 1, 27 N. E. 394. But the act in question makes no provision as to the time when the surrogate shall appoint an appraiser or make an appraisement. In many cases, doubtless, an appraisement may be made immediately after the issuing of letters testamentary or of administration. But it is obvious that there are other cases where such an appraisement cannot be made until the amount of the debts against an estate are ascertained by legal proceedings; as in the case of a deceased person leaving a large amount of property, but against whose estate large claims are made, and contested by the personal representatives, it cannot be known what amount of claims will be allowed, and hence the amount of the estate that will pass to the heirs and next of kin, until the settlement of the estate. In such a case it is clear that a surrogate would be unable to ascertain the amount of the estate liable to a tax under the provision of section 1 of the act in question, until the amount of the debts was legally ascertained. Section 5 of the act is as follows:

"The penalty of ten per cent. per annum imposed by section four hereof, for the non-payment of said tax, shall not be charged where in cases by reason of claims made upon the estate, necessary litigation or other unavoidable cause of delay, the estate of any decedent, or a part thereof, cannot

be settled at the end of eighteen months from the death of the decedent, and in such cases only six per cent. per annum shall be charged upon the said tax, from the expiration of said eighteen months until the cause of such delay is removed."

This section recognizes the fact that a surrogate may find it necessary to delay an appraisement, in consequence of claims made on the estate, litigation, or other unavoidable cause of delay. The question arises, did the surrogate err, in the case under consideration, in making the final order of appraisement on the 24th day of February, 1896, from which this appeal is taken? It should be remembered that the order was made nearly six years after the death of Samuel Westurn. As before stated, the statute does not prescribe at what time the surrogate shall make an appraisement under the act in question. He is not compelled to wait until the final accounting of the executor or administrator. See In re Vassar, supra. He can make the appraisement at any time when he is able to determine the amount of the estate that will pass to the heirs and next of kin.

The appellants object that the appraisement includes a note of one Burgess, of $1,500, to recover the amount of which an action was pending. The appraiser, however, received evidence in regard to the claim, and held it valid. There was no testimony on the rehearing before the surrogate to show that the maker had any legal defense to the action upon the note, or that he was not responsible, or that the note could not be collected. In the absence of such testimony, we see no reason to interfere with the determination of the appraiser and the court below, holding that such a note was an asset of the estate of said deceased, passing to the appellants as his next of kin.

The appellants also object to the order on the ground that a claim had been presented to the administrator, and other claims were liable to be presented, that might reduce the amount of the estate that would pass to the appellants. The appraiser had reported to the surrogate that there were no debts against the estate of said deceased that he had been able to ascertain. We think, on the appeal to the surrogate, it was the business of the appellants to show, if they could, that the report of the appraiser was erroneous. This they could have done by showing, or giving evidence tending to show, that there were valid claims against the estate. Showing the fact that one Lucinda Taft had presented a claim for $2,160 did not avail the appellants, or show error in the conclusion of the appraiser. The claim, on its face, was a suspicious one. It was for services alleged to have been performed for the estate from March 1, 1882, to March 1, 1888. Such alleged services terminated over two years before the death of Samuel Westurn, and the claim was sworn to on the 8th of October, 1895,—over seven years after the alleged termination of the employment. There was no proof that any action or proceeding had been commenced. If the appellants had offered any testimony sufficient to make out a prima facie case that the claim in question was a valid one, or even a doubtful one, or that there were probably other valid claims against the estate of the said deceased

for any considerable sum, doubtless it would have been the duty of the surrogate to have delayed the appraisement. But under the peculiar circumstances of this case, considering the long period that had elapsed since the death of Samuel Westurn, when the order appealed from was made, the length of time the inheritance tax on his estate had remained unpaid, and the fact that the statute does not prescribe the time when the appraisement shall be made, we are of the opinion that the surrogate, in his discretion, was authorized to determine the amount of the estate that passed to the appellants, at the time he did, in the best manner that he was able to. And, on examining the testimony offered or given by the appellants on the appeal to the surrogate from the appraisement made, we are unable to determine that there was any error in the final order herein.

The order should be affirmed, with costs to the respondent to be paid out of the estate.

LANDON and HERRICK, JJ., concur. PARKER, P. J., and MERWIN, J., dissent.